## Richmond

MICHAEL ALLEN KIRKPATRICK v. COMMONWEALTH OF VIRGINIA.

October 12, 1970.

Record No. 7332.

Present, All the Justices.

*John A. Paul*, for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

In the court below the jury found defendant, Michael Allen Kirk-

patrick, guilty of robbery in the second degree, and fixed his punishment at 5 years confinement in the penitentiary. The trial judge sentenced defendant accordingly, and we granted him a writ of error to the final judgment.

On the 20th day of May, 1968, at about 2:20 A. M., James Thomas, employed as a desk clerk by the Belle Meade Motel in Harrisonburg, was robbed of $93 in United States currency (two $20 bills, one $10 bill and forty-three $1 bills) by an individual subsequently identified as Wayne Edward Poole.[1]

In accomplishing the robbery Poole pointed a sawed-off shotgun at the clerk. The gun was concealed in a large suitcase which Poole carried when he entered the motel. The clerk noted that the robber fled in a red car.

The police were immediately notified of the robbery and within approximately 30 minutes located a 1960 red Ford four-door hardtop automobile with a warm engine at the Rockingham Motel. Having ascertained that its driver, Kirkpatrick, was registered there, they sought and gained entry to his room, arrested and dispatched him to the Belle Meade Motel for a possible identification by Thomas. The officers thereupon completed their search of defendant's room and found Poole, who was concealed under a bed armed with a loaded sawed-off shotgun and 4 shells. He was arrested and removed from the room together with the gun and shells.

The police found in the room a large blue suitcase which was open and contained a pair of trousers with twenty-two $1 bills in the pockets. In Poole's pocketbook they found some change, one $20 bill and twenty-one $1 bills, including a creased $1 bill identified by Thomas as having come from the Belle Meade's cash register. Kirkpatrick had on his person some change, two $10 bills and seven $1 bills. In the glove compartment of Kirkpatrick's car was found a box containing twenty 12-gauge shotgun shells of the same size, type and calibre as the 5 shells that were found on Poole when arrested under the bed. A full box contains twenty-five shells.

About 1:45 A. M. on May 20th and prior to the robbery, Poole entered the lobby of the Rockingham Motel and inquired about the rental of a room for 2 or 3 days. Some 15 minutes later Kirkpatrick inquired of the clerk at the Holiday Inn about accommodations for several days. The clerk there noted that defendant was operating a

[1] Wayne Edward Poole was convicted by a jury of the robbery of James Thomas on November 22, 1968, and sentenced to 20 years in the penitentiary. See *Wayne Edward Poole* v. *Commonwealth*, 211 Va. 262, 176 S.E.2d 917 (1970).

red car. Neither Poole nor Kirkpatrick rented the rooms about which they inquired. The two motels and the Belle Meade are in the Harrisonburg area.

At about 2:30 A. M. and following the robbery, Kirkpatrick rented a room at the Rockingham Motel. The clerk noted that he was very nervous, impatient and excited while registering. He did not observe anyone in the red car which Kirkpatrick was driving. Poole testified that he was in the car, but was "not setting up"—he was "sort of down . . . over to the side".

The Commonwealth established that for about two months prior to the robbery Kirkpatrick had lived in his father's home near Clarksville, Virginia, and during that time had worked briefly for Lawson Jones, a contractor; that in his construction office Jones kept a 12-gauge shotgun and rifle; that Kirkpatrick had been in this office a number of times; that the Jones office building was broken into and the gun and rifle removed sometime between 12 noon on May 18th and 5 A. M. on May 20th; that about 3 P. M. on May 19th, C. C. Bowman, who operates a garage across the road from the Jones office building, observed two men standing by a red 1960 Ford hardtop car at the back corner of the Jones building; and that shortly thereafter Bowman observed the car and two men leaving the premises at a rapid speed. This witness knew defendant, was familiar with the Kirkpatrick car, and thought he recognized the car as the one that defendant drove. He said the car was the only one of its model in his area at that time.

The sawed-off shotgun used by Poole in the robbery was identified by Jones as the gun taken from his office, as was the rifle also recovered by the Harrisonburg police. Defendant's father identified the suitcase and stated that it was missing from the home in which his son lived. He also said that he owned the red Ford car customarily used by defendant, and that defendant was driving it on May 19th-20th.

Poole's home is in Los Angeles, California. There is no evidence that anyone in Clarksville other than defendant knew him; that Poole was ever in Clarksville prior to Saturday evening, May 18th; or that Poole had any knowledge of the Clarksville area or its people. He was introduced to Mr. Kirkpatrick, Sr. by defendant on Sunday, May 19th. At that time Poole and defendant left Clarksville saying they intended to go to Baltimore. Defendant was not given any money by his father.

Harrisonburg is approximately 175 miles from Clarksville. Poole

testified and made an effort to absolve Kirkpatrick of all involvement in the Belle Meade robbery. During the course of his testimony he said that they arrived in Harrisonburg Sunday evening, May 19th, at about 8:30 P. M. and went to see his sister, a student at Madison College, staying there until about 12:00 midnight.

Kirkpatrick made no statement to the officers following his arrest, other than to say that he did not know who Poole was, had never seen him before and did not have any idea how Poole got in the room. He said that he did not know anything about Poole.

Defendant's first assignment of error is that the court erred in allowing evidence to be introduced of the breaking and entering of the Lawson Jones office in Clarksville and the theft therefrom of two weapons. In his motion to suppress this evidence, he contended that it was "immaterial to the alleged robbery" and that its introduction was merely intended to prejudice the jurors against the defendant.

The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. It is also well established that evidence of other offenses should be excluded if offered merely for the purpose of showing that the accused was likely to commit the crime charged in the indictment. However, the exceptions to the general rule are equally as well established. Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part. Frequently it is impossible to give a connected statement showing the crime charged without incidental reference to such contemporaneous and similar crimes and where there is only such incidental disclosure of other offenses. See *Williams* v. *Commonwealth*, 203 Va. 837, 127 S. E. 2d 423 (1962); *Day* v. *Commonwealth*, 196 Va. 907, 86 S. E. 2d 23 (1955); *Barber* v. *Commonwealth*, 182 Va. 858, 30 S. E. 2d 565 (1944); *Boyd* v. *Commonwealth*, 156 Va. 934, 157 S. E. 546 (1931); *Colvin* v. *Commonwealth*, 147 Va. 663, 137 S. E. 476 (1927).

We have repeatedly recognized that the leading case on the principles here involved is *Walker* v. *Commonwealth*, 1 Leigh (28 Va.) 574 (1829). There a man was indicted for stealing a watch and evidence was admitted that at one time he had stolen a coat. In setting aside his conviction the court held that this evidence was inadmissible because it was a distinct charge which the prisoner was not called on to defend, which he could not be prepared to defend, and which had no such necessary connection with the transaction then before the court as to be inseparable from it.

In the course of its opinion, the court, speaking through Judge Brockenbrough, enunciated the principles which control our decision here as follows:

> "It frequently happens, however, that as the evidence of circumstances must be resorted to for the purpose of proving the commission of the particular offence charged, the proof of those circumstances involves the proof of other acts, either criminal or apparently innocent. In such cases, it is proper, that the chain of evidence should be unbroken. If one or more links of that chain consist of circumstances, which tend to prove that the prisoner has been guilty of other crimes than that charged, this is no reason why the court should exclude those circumstances. They are so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety; and there is no reason why the criminality of such intimate and connected circumstances, should exclude them, more than other facts apparently innocent. Thus, if a man be indicted for murder, and there be proof that the instrument of death was a pistol; proof, that that instrument belonged to another man, that it was taken from his house on the night preceding the murder, that the prisoner was there on that night, and that the pistol was seen in his possession on the day of the murder, just before the fatal act committed, is undoubtedly admissible, although it has the tendency to prove the prisoner guilty of a larceny. Such circumstances constitute a part of the transaction; and whether they are perfectly innocent in themselves, or involve guilt, makes no difference, as to their bearing on the main question which they are adduced to prove." 1 Leigh (28 Va.) 576-577.

The evidence against Kirkpatrick was all circumstantial. It was his associate Poole who robbed Thomas at the Belle Meade Motel. Prior

to Kirkpatrick's arrest Thomas had no knowledge that defendant was involved in the robbery, or that he was the accomplice in the red car.

When questioned by the officers, Kirkpatrick denied any knowledge of Poole. It was therefore crucial to the Commonwealth's case that the relationship and connection between Poole and Kirkpatrick be shown and that the association and actions of these two men throughout the hours that immediately preceded the robbery be shown in evidence. What occurred in Clarksville was a part, a prelude and preliminary to what happened in Harrisonburg. The ownership and identification of the car, gun and suitcase were pertinent to the Commonwealth's case. The Commonwealth properly sought to establish that these items were linked to Kirkpatrick and Clarksville, Virginia, and not to Poole and Los Angeles, California.

To show the intimacy and connection between Poole and Kirkpatrick, the father of the accused was called as a witness to establish that on the night preceding the robbery Poole showed up in Clarksville as a friend of his son. This destroyed the truthfulness of defendant's statement to the officers that he did not know Poole. When the two men were apprehended after the robbery of $93 from the Belle Meade Motel, they had a total of $92.43 between them, this being the amount left from any money they had and the proceeds of the robbery after paying for the motel room and for gas and expenses incident to the trip from Clarksville to Harrisonburg. The fact that none of this money was supplied Kirkpatrick by his father was admissible in accounting for the amount taken in the robbery and the amount found on them.

The destination of the two men when they left Clarksville was relevant and therefore their statement to defendant's father that they intended to go to Baltimore, rather than to Harrisonburg, had evidentiary value.

The victim of the robbery, Thomas, recognized that the car used by the robber to flee the scene was a red car. When the officers arrested Kirkpatrick a red 1960 Ford was parked in front of his room. It therefore became necessary for the Commonwealth to show the ownership of this car, the fact that it was customarily driven by defendant and was in his possession during the entire day and night preceding the robbery. To establish this Clarksville witnesses had to be called.

The weapon used in the robbery was a sawed-off 12-gauge shotgun, and both its barrel and stock had been shortened. This alteration made it a more lethal weapon and of such length that it could

be fitted into and concealed in the suitcase. Thomas advised the Harrisonburg officers that Poole had a large dark suitcase from which he removed the shotgun. When the officers entered Kirkpatrick's room at the Rockingham Motel a large dark suitcase of the general size and type described by Thomas was seen. The identification by defendant's father of this suitcase, and its connection with Clarksville and Kirkpatrick, was an important link in the chain of evidence.

The origin and identity of the gun were also links. The fact that the gun was owned by a former employer of Kirkpatrick; that it customarily stayed in open view in this employer's office; that Kirkpatrick had been in the office several times; and that two men were seen behind that office a few hours prior to the robbery of the Belle Meade in a car which Bowman recognized to his satisfaction as the Kirkpatrick automobile, were all relevant facts. Bowman was so convinced of the identity of the car, whose "front end was just about behind the window that was broken" in the Jones construction office, as belonging to Kirkpatrick, that he advised the officers where to start their investigation. The gun, recently stolen, and which at the time of the robbery had been concealed in Kirkpatrick's suitcase, was found in the room of defendant less than 12 hours after the red car and two men were seen at the Jones office.

From the record it appears that Kirkpatrick and Poole remained together for the entire 24 to 30 hours preceding the robbery. They were together when Kirkpatrick introduced Poole to his father, and when they left him about noon, Sunday, May 19th. There were two men seen behind the Jones construction building and two men in the red car when it pulled away at a very rapid rate of speed.

In Harrisonburg on the night of the robbery, two men, Kirkpatrick and Poole, alternated in inquiring about rooms, irrespective of whether the inquiries were made bona fide to seek accommodations, or to gain information before deciding which Harrisonburg motel would be robbed, or to determine if a room was available for their concealment following the robbery.

Kirkpatrick did not testify and offered no affirmative evidence other than that given by Poole. Poole's statement that they visited his sister at Madison College from 8:30 to 12 P. M. was not corroborated. No sister, or any other witness, was called who saw defendant and Poole at Madison College.

The testimony of Poole that he excused himself while Kirkpatrick was drinking coffee at a restaurant, on the pretense of going back to Madison College to see someone about 1:40 A. M., and committed

the robbery without the knowledge of Kirkpatrick, was rejected by the jury.

We conclude that it was necessary and proper for the Commonwealth to show the events and occurrences in Clarksville in order to prove the involvement of Kirkpatrick in the robbery of the Belle Meade Motel by Poole. It was proper that the chain of events, which involved the automobile, the suitcase, the gun, the destination of Poole and Kirkpatrick and their lack of funds, should be unbroken. The mere fact that one or more links of that chain consist of circumstances which indicate that Poole and Kirkpatrick were involved in the larceny of the gun from Lawson Jones is no reason why the court should exclude those circumstances. They are "so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety; and there is no reason why the criminality of such intimate and connected circumstances, should exclude them, more than other facts apparently innocent." *Walker* v. *Commonwealth, supra,* at 576. It is impossible from a fair reading of the evidence in this case to disassociate Kirkpatrick from the theft of the gun that was used in the robbery.

■ The defendant also questions the introduction in evidence of the shotgun, the suitcase, the shotgun shells and money located by the police in the room of defendant at the Rockingham Motel. He claims that the search of the motel room was illegal and the admission of the fruits thereof was prejudicial error.

We have no difficulty in deciding that Kirkpatrick was arrested by Officer Glen Wilcox immediately after the officer entered defendant's room. Not only does the officer say so, but the manner and circumstances surrounding the entry and the taking into custody of Kirkpatrick establishes the arrest.

The question for our decision involves the shotgun and the 5 shells which were removed from the room incident to and following a lawful arrest of defendant and as a part of the investigation then underway by the officers. All other items were removed from the room and car pursuant to a search warrant.

The Harrisonburg officers were faced with an armed robbery committed by one or more persons. The only information they had was a description of the robber as a young man and the fact that he fled the scene in a red car. It was necessary that they move fast. All available officers, state, city and county, were alerted, and the authorities in adjoining areas were advised to set up road blocks. There was the possibility that the robber or robbers may have "holed up" in one

of the many motels in the Harrisonburg area and hence the checking of these motels for any red vehicle with a warm motor.

When Kirkpatrick's red car was located at the Rockingham Motel, and it was found that its driver had recently registered into Room 16, this person became a prime suspect. It was important for the officers to determine immediately if the occupant of this room was the man they were seeking. If not, he had to be eliminated as a suspect, and the search intensified in other areas and in other directions. It was with this background that they sought and gained entrance to Kirkpatrick's room. The evidence shows the initial search of the room by Officer Wilcox was a cursory one. He was interested in affording the victim of the robbery a prompt opportunity to either identify or not identify Kirkpatrick.

The arrest of Kirkpatrick was accomplished in a matter of minutes and he was put in a police car and dispatched, with police officers, to the Belle Meade to be seen by Thomas.

When Kirkpatrick was taken from the motel room the door was left open, for Wilcox testified that he intended to return, and did return, "running", in a matter of 10 to 30 seconds. It was then the officer completed his search of the room. His testimony was: "I was looking for the weapon I wasn't looking for another—I was looking for whatever I could find whether it was a weapon or a man or whatever. I was searching the room." After looking in the commode tank and blankets, he looked under the bed and found Poole armed with the shotgun and shells. The return of the officer to this room, and the completion of his search, was not only indicated but reasonable. To have closed the door and sealed the room off, awaiting the procuring and issuance of a search warrant, would have given any accomplice of defendant an ample opportunity to have destroyed a portion of the evidence. Poole would have then had a chance to mutilate the currency which he had in his pocketbook and in the suitcase, and flushed it down the commode. It would have given Poole an opportunity to escape and thereby frustrate the efforts of the officers to apprehend the robbers, and possibly endangered the lives of others.

We conclude that the search of Room 16, and the seizure of the gun and 5 shells within a few minutes after the lawful arrest of Kirkpatrick, based on probable cause, were incident to and contemporaneous with the arrest. The search was properly confined to the room and immediate vicinity of the arrest. It was reasonable under all the facts and circumstances then existing. The officer's search was directed specifically to the means and instrumentalities by which a

robbery had been committed. The officer had reason to believe that the weapon or weapons, and other means, used to commit the robbery, were stored in the room, and the possibility existed of the presence of an accomplice there. Had Wilcox not made the search and seizure at the time he did, a portion of the evidence could have been destroyed or concealed and the accomplice might have escaped.

■ Our holding here meets the test promulgated in *United States* v. *Rabinowitz,* 339 U. S. 56, 70 S. Ct. 430, 94 L. ed. 653 (1950) and *Harris* v. *United States,* 331 U. S .145, 67 S. Ct. 1098, 91 L. ed. 1399 (1947). We are not unmindful that both cases were overruled by *Chimel* v. *California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L. ed. 2d 685 (1969), which held a search without a warrant impermissible if it extends beyond the arrestee's person and the area from which he can obtain a weapon, or obtain and destroy something that can be used as evidence against him.

However, we further conclude that *Chimel* should apply only prospectively, and to searches conducted after June 23, 1969, the date of the decision. The trial of the instant case was had on November 13-14, 1968. Our conclusion that *Chimel* applies prospectively only finds support in *Porter* v. *Ashmore,* 421 F. 2d 1186 (4th Cir. 1970) and *Creasy* v. *Leake,* 422 F. 2d 69 (4th Cir. 1970). See also *United States* v. *Bennett,* 415 F. 2d 1113 (2d Cir. 1969); *United States* v. *Mazzochi,* 424 F.2d 49 (2d Cir. 1970); *United States* v. *Pino,* 431 F.2d 1043 (2d Cir. 1970); *Lyon* v. *United States,* 416 F.2d 91 (5th Cir. 1969); and *Williams* v. *United States,* 418 F.2d 159 (9th Cir. 1969).

We have considered the other assignments of error made by defendant and find no cause for reversal. The verdict of the jury, approved by the trial court, is amply supported by the evidence.

Accordingly, and for the reasons assigned, the judgment of the lower court is

*Affirmed.*