WESLEY NICHOLAS, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1979-90-2

Decided September 29, 1992

Counsel

Robert B. Hill (Hill & Raney, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**BENTON, J.**—In two separate trials, Wesley Nicholas, Jr., was convicted of abduction, malicious wounding, and use of a firearm in the commission of a malicious wounding. Nicholas appeals on issues arising from both proceedings. He contends that the trial judge erred in (1) denying the motion he made during the first trial to exclude evidence of "other crimes," and (2) finding the evidence sufficient to sustain the convictions in the second trial. We reverse the abduction conviction and remand for a new trial. We affirm the convictions for malicious wounding and use of a firearm which arose from the second trial.

I.

Ryan O. Roney was shot in a restaurant. Nicholas was identified as a participant in that incident and was charged with aggravated malicious wounding, use of a firearm in the commission of the malicious wounding, and abduction. Prior to the trial, Nicholas' counsel filed a motion in limine requesting the trial judge to exclude testimony that thirteen hours prior to the restaurant incident Nicholas shot into a residence and an automobile. Nicholas objected to the Commonwealth's proof of this other crime, contending that its prejudice outweighed its probative value. Based upon the Commonwealth's assertion that the

evidence was needed to prove that Nicholas possessed the same gun used in the restaurant shooting on the occasion of the earlier shooting, the trial judge overruled the motion in limine.

The evidence at the first trial proved Nicholas was arrested early one morning and charged with shooting into an automobile and a residence the night before. A witness reported that Nicholas and several unidentified men shot into an automobile and a residence with a semi-automatic gun and other weapons. The police recovered an expended .45 caliber bullet, a .45 caliber shell casing, and a nine-millimeter shell casing. After posting bail and being released on that charge, Nicholas left the jail in an automobile with James Strothers, Antoine Kitt, Ernest Jones, and Tyrone Jones. Strothers testified that they first stopped at Kitt's home. Inside the house, Kitt withdrew a nine-millimeter gun from beneath a sofa, showed it to them, and placed it back under the sofa. Nicholas and Kitt remained alone in the house for a short while after Strothers and the two other men returned to the automobile. Kitt and Nicholas joined them in the automobile a few seconds later.

While the five men were riding in the automobile, they saw Roney in his vehicle. Strothers testified that ''everybody was upset about . . . Roney shooting up [Nicholas'] mother's house.'' Strothers testified that Nicholas said, ''Follow [Roney], I'm going to beat [him] for shooting at my house. I'm going to beat his ass.'' Roney testified that he saw the automobile and identified the occupants to be Ernest Jones, Tyrone Jones, Kitt, Strothers, and another man whose face he could not see.

Several minutes later, as Roney stood in line at a restaurant, he saw Tyrone Jones, Strothers, Nicholas, and Kitt enter the restaurant. They were laughing and looking at him. As Kitt walked across the restaurant and out the opposite door, Strothers hit Roney and, with the aid of Jones, pulled Roney into a corridor. During the struggle, Roney repeatedly denied shooting into the home of Nicholas's mother. Roney testified that he saw Nicholas standing at the end of the corridor. Roney further testified that Nicholas removed a gun from beneath his sweatshirt and joined the fight. Roney said that when he grabbed Nicholas' wrist, Nicholas shot him three times. Strothers also testified that Nicholas shot Roney. Strothers said the gun was the same one that he saw Kitt with earlier that day.

According to Strothers, he, Nicholas and Tyrone Jones ran back to the automobile where Ernest Jones was waiting. Kitt, who had been standing outside, joined them in the automobile. However, a witness, standing across the street, claimed he saw only two men run out of the restaurant, subsequently joined by a third man who had been pacing outside the restaurant. Another witness also claimed to have seen only two men come out of the restaurant and get into the automobile before the third man, who had been standing outside, got in. This witness testified that he saw only four people in the automobile as it left the scene.

The first police officer who arrived on the scene testified that he asked Roney who shot him. He said Roney mumbled something that he did not understand. When he repeated the question, Roney responded "Fishbone," Strothers' alias. Roney denied that he told the officer who responded to the call that "Fishbone" shot him. The rescue worker who transported Roney to the hospital testified:

[The officer] asked him once [who shot him] and the patient stated Fishbone. He asked him if he was sure it was Fishbone and then several times in the back of the ambulance the patient told me that Fishbone had shot him.

Over objection, the Commonwealth offered evidence from which the jury could have concluded that the bullets and casings found at the restaurant were fired from the same gun as the bullets and casings recovered from the street in front of the residence into which shots were fired the previous evening by a person identified as Nicholas.

The jury found Nicholas guilty of all charges. Nicholas' counsel then made a motion to set aside the verdicts because the ambiguity in the proof of Roney's injury did not satisfy the language of the aggravated malicious wounding statute. The trial judge sustained Nicholas' motion to set aside the verdicts of aggravated malicious wounding and use of a firearm, but allowed the abduction conviction to stand. Several months later at the beginning of the second trial, the Commonwealth amended the charge of aggravated malicious wounding to malicious wounding. Nicholas was tried and convicted by a jury for malicious wounding and the use of a firearm in the commission of a malicious wounding.

## II.

Prior to the first trial, the Commonwealth's attorney asserted that the "other crimes" evidence was necessary to establish the identity of Nicholas as the one who shot Roney. Although Roney would testify that Nicholas shot him, Nicholas' identity as the gunman was disputed because some of the evidence also tended to support Nicholas' theory that Strothers was the one who shot Roney.

"The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged." *Kirkpatrick v. Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). The exceptions to this rule are equally well established. "Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial." *Id.* "But when relevant evidence is offered which may be inflammatory and which may have a tendency to prejudice jurors against the defendant, its relevancy 'must be weighed against the tendency of the offered evidence to produce passion and prejudice out of proportion to its probative value.'" *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

At trial, the Commonwealth's evidence proved that on the night prior to the incident in which Roney was shot, Nicholas was identified as one of several people who shot into a residence and an automobile. The evidence proved, however, that several persons shot into the residence that night using "more than one gun." One of the guns was the same gun used to shoot Roney the following day. Whether Nicholas was the one who used the gun at issue that night cannot be ascertained from the record. In addition, the Commonwealth's evidence proved that shortly before Roney was shot, Kitt had retrieved the gun from Kitt's house. Indeed, the Commonwealth's evidence proved that Kitt was the person last seen with the gun before the men entered the restaurant.

The jury in this case had to resolve whether Nicholas or Strothers shot Roney. The Commonwealth's evidence proved that both Nicholas and Strothers were acting in concert with three other men when they went into the restaurant and attacked Roney. The five men, believing

that Roney had shot into Nicholas' mother's house, went into the restaurant with the express purpose to harm Roney. Strothers testified the group "split up" before entering the restaurant and that he, Strothers, entered with Kitt. Nicholas entered by another door. Strothers also admitted that without speaking he hit Roney first. Strothers charged and hit Roney, knocking him away from the counter and into a hallway. When Strothers hit Roney, Kitt, who was standing beside Strothers, left the restaurant. Whether Kitt gave the gun to Strothers as he entered the restaurant or whether Kitt had given the gun to Nicholas earlier was an issue for the jury to resolve. Although Roney testified at trial that Nicholas shot him, both the police officer who first reached the scene of the shooting and the ambulance worker who gave aid to Roney testified that immediately after the shooting Roney identified Strothers as the person who shot him.

Proof that Nicholas was the criminal agent did not depend on linking him with the gun that was used in both incidents. *Cf. Woodfin v. Commonwealth*, 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988), *cert. denied*, 490 U.S. 1009 (1989). Even if Nicholas shot into the residence on the earlier occasion, the evidence undisputably proved that during that same incident several people used more than one gun to shoot into the residence. Moreover, the evidence is also undisputed that Nicholas was not in continuous possession of the gun used to shoot Roney. The undisputed testimony proved that Kitt was the last person seen with the gun before the shooting. Thus, the evidence that tends to prove Nicholas had the gun a day earlier had minimal probative value in helping the jury decide whether Strothers or Nicholas received the gun from Kitt prior to the shooting. Indeed, whether Nicholas had the gun the previous day had "no causal relation or logical and natural connection" with Kitt's disposition of the gun on the day Roney was shot in the restaurant. *Bunting v. Commonwealth*, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967). The prejudice of proving criminal misconduct by Nicholas on some earlier occasion clearly outweighed the minimal, if any, probative value of the evidence. "We can only speculate whether the jury was so inflamed by the evidence of the [other crimes] that it sought to punish [the defendant] for these acts as well as the one for which he was on trial." *Rider v. Commonwealth*, 8 Va. App. 595, 600, 383 S.E.2d 25, 28 (1989). Accordingly, we must reverse the abduction conviction that was allowed to stand at the conclusion of the first trial and remand for a new trial if the Commonwealth be so advised.

## III.

Nicholas challenges the sufficiency of the evidence supporting his convictions obtained during the second trial on the charges of malicious wounding and use of a firearm in the commission of a felony. The evidence of other crimes is not a factor in this analysis because that evidence was not introduced at the second trial. During the months that intervened between the two trials, Nicholas had been tried and acquitted of the charges of shooting into the residence.

■ "Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom." *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). When the evidence is considered in accordance with this standard of review, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Nicholas committed the crimes of malicious wounding and use of a firearm in the commission of the wounding. The evidence concerning the events at the restaurant was substantially the same on retrial as it was at the first trial. Roney identified Nicholas as the man who shot him. Roney's testimony was corroborated by Strothers. Although the evidence contained testimony that immediately after Roney was shot he said Strothers shot him, the officer who spoke to Roney testified that Roney mumbled something incoherent before mentioning Strothers' name.. Roney said he identified both Nicholas and Strothers when he was questioned.

> "In testing the credibility and weight to be ascribed in the evidence, we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them."

*Swanson v. Commonwealth*, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989) (quoting *Bradley v. Commonwealth*, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955)). We defer to the jury's resolution of this evidence against Nicholas.

Nicholas contends that the evidence proved that Strothers ran from the restaurant with the gun. He claims that this evidence buttresses his

hypothesis that Strothers shot Roney. We disagree. The witness testified that, when the men ran from the restaurant, the man carrying the gun "was the taller" man. The evidence proves Strothers is taller than Nicholas. However, the record also proved that Tyrone Jones, who also ran from the restaurant, was as tall as Strothers.

Strothers testified that Nicholas said he was "going to get [Roney's] ass." That testimony, coupled with Nicholas' use of a gun to get revenge, proved Nicholas' intent to "maim, disfigure, disable or kill" Roney. As a result of the shooting, Roney was paralyzed. The evidence thus proved beyond a reasonable doubt the elements of the crime of malicious wounding. Accordingly, we affirm these convictions.

*Affirmed in part, reversed in part, and remanded.*

Koontz, C.J., and Duff, J.,* concurred.

---

* Judge Duff participated in the hearings and decision of this case prior to the effective date of his retirement on September 1, 1992 and thereafter by designation pursuant to Code § 17-116.01.