COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Baker and Coleman
Argued at Richmond, Virginia


DANIEL CARSON WILLIAMS

v.        Record No. 0701-95-2        MEMORANDUM OPINION[*]
                                      BY JUDGE JOSEPH E. BAKER
COMMONWEALTH OF VIRGINIA                   MAY 14, 1996

            FROM THE CIRCUIT COURT OF POWHATAN COUNTY
                      Thomas V. Warren, Judge

            Andrea C. Long (David E. Boone; Boone, Beale,
            Carpenter & Cosby, on brief), for appellant.

            Brian Wainger, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


        Daniel Carson Williams (appellant) appeals his bench trial

convictions of aggravated sexual battery of his granddaughter, a

female child less than thirteen years of age, in violation of

Code § 18.2-67.3, and for violation of Code § 18.2-370.1 by the

Circuit Court of Powhatan County (trial court).  The sole issue

is whether the trial court erred in admitting evidence that

appellant had previously sexually abused his daughter (the

victim's mother).

        Appellant was indicted by a Powhatan County grand jury on

six charges, two of them being that on or about July 22, 1994 he

committed aggravated sexual battery upon his granddaughter (WRN),

 a female child of less than thirteen years of age, and that on

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

that same date he exposed his genital parts to WRN. The remaining indictments charged appellant with having sexually abused his daughter (Trecia), the victim's mother, and another grandchild.

Appellant moved to sever the several charges for trial purposes. The motion was granted and the two charges involving WRN were scheduled for trial together, with the other charges to be tried subsequently.

At trial, WRN testified that during the late morning hours of July 22, 1994, appellant, who she affectionately called "Pop Pop," picked her up from her house and took her out for ice cream. After she ate the ice cream, he took her back to his house where he pulled down his pants, exposed his penis, and rubbed it against her vagina. Appellant was drunk at the time.

Trecia testified that on the day of the offenses she left WRN at home with her sixteen-year-old son. When she found out that appellant had picked up WRN and that WRN was at appellant's house, she panicked.

Appellant objected when Trecia was asked on direct examination whether there was any particular reason why she would not have asked appellant "to pick [WRN] up." Appellant argued that the Commonwealth should not be permitted "to get into some of the charges that were set for trial in January."[1] The trial

_____

[1]This reference was to the charges that had been severed by the trial judge for trial pursuant to appellant's motion.

court overruled the objection holding that the answer "goes to [Trecia's] state of mind."

Trecia subsequently testified that she knew appellant had been drunk the night before. After Trecia's testimony about appellant's drinking problem, the following dialogue occurred:

COMMONWEALTH: Did you have any experience in the past that impacted on your wishes about [WRN] being alone with your father?

TRECIA: Yes, sir.

COMMONWEALTH: What was that?

TRECIA: He had abused me, molested me as a child.

COMMONWEALTH: Approximately how old were you when he started to do that?

TRECIA: I can remember back as far as, I guess, seven or eight.

Appellant voiced no objection to these specific questions or answers.

Trecia further testified that when she left work she headed straight for her parents' house. Trecia was accompanied by a fifteen-year-old female (Rebecca), a trainee at her job. Trecia retrieved WRN. She testified that appellant was "stone drunk" and "acting nasty," that he "put his hands across [her] breast," and attempted to slip his hand down Rebecca's dress. Trecia took WRN home and temporarily left WRN at her home with Rebecca while she took her son outside. She came back shortly thereafter and found Rebecca crying and telling her that Trecia needed to talk to WRN.

- 3 -

After learning from WRN that appellant had sexually abused her, Trecia examined WRN's vaginal area, discovered evidence of the abuse, and reported the assault to the police. WRN was taken to The Medical College of Virginia Hospital where she was examined and treated by Dr. Dinea DeSouze (DeSouze).

DeSouze examined WRN and found that she suffered tremendous physical trauma. DeSouze observed significant irregularities to WRN's external genitalia. Her entire labia minora was bright red, and there was an abrasion on the right side of the labia majora. DeSouze noted that her vaginal tissue was very "friable," that is, there was no active bleeding but if it were touched with a Q-tip, it would start bleeding. DeSouze stated, "there is no question" that the child was traumatized and because of the nature and location of the injury, it was not self-inflicted.

Rebecca testified that two or three days prior to the incident, appellant had asked her about her "pussy," and that at a time prior to that he had shown her a pornographic picture of two women and a man having sex.

Appellant told Detective Gregory Neal that Trecia had asked him to pick up WRN and take care of her. Trecia denied that claim and explained why she would not have made such a request. At trial, appellant admitted that Trecia had never asked him to pick up WRN.

Evidence presented on behalf of appellant obviously was

- 4 -

rejected by the fact finder and need not be repeated here.

Citing <u>Kirkpatrick v. Commonwealth</u>, 211 Va. 269, 176 S.E.2d 802 (1970), appellant argues that Trecia's testimony concerning her being sexually abused by appellant constituted evidence of other crimes, requiring that his convictions be reversed. We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." <u>Blain v. Commonwealth</u>, 1 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). As a general rule, other crimes evidence is inadmissible. <u>Kirkpatrick</u>, 211 Va. at 272, 176 S.E.2d at 805. However, the "general rule" must sometimes yield to society's interest in the truth-finding process and numerous exceptions allow evidence of prior misconduct whenever the legitimate probative value outweighs the incidental prejudice to the accused.[2] <u>Lewis v. Commonwealth</u>, 225 Va. 497, 303 S.E.2d 890 (1983); <u>see also</u> <u>Wilkins v. Commonwealth</u>, 18 Va. App. 293, 443 S.E.2d 440 (1994). For this reason, rather than stating the rule as an exclusionary rule with "numerous exceptions," it may be more helpful to phrase it in terms of relevancy. <u>Wilkins</u>, 18 Va. App. at 297, 443 S.E.2d at 443 (citing Charles E. Friend, <u>The Law of Evidence in Virginia</u> §§ 12-13 (4th ed. 1993).

---

[2] <u>See</u> <u>Sutphin v. Commonwealth</u>, 1 Va. App. 241, 337 S.E.2d 897 (1985)(listing eight exceptions).

In the case before us, appellant had stated to the police that Trecia had asked him to pick up WRN and to take her to appellant's house. Whether that explanation was truthful was material to appellant's credibility and his explanation of how WRN happened to be in his custody. The issue of credibility was particularly material after Trecia testified that upon learning that appellant had taken WRN to his house without Trecia's permission, Trecia "panicked." Thus, the objected to evidence was relevant to show why she panicked and to prove that appellant had not been truthful when he told the police that Trecia had asked him to pick up WRN. The trial court limited the evidence and did not allow any details of the prior sexual assaults. Accordingly, we hold that the legitimate probative value outweighs any incidental prejudice to appellant, particularly where as here the trial judge in a bench trial is presumed to disregard prejudicial or even inadmissible evidence. See Hall v. Commonwealth, 14 Va. App. 892, 421 S.E.2d 455 (1992).

Finally, appellant argues that in finding him guilty and imposing sentence, the trial judge erroneously considered Trecia's testimony of appellant's prior abuse. The record indicates otherwise.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.