COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Agee
Argued at Alexandria, Virginia


CALVIN DREW SWANIGAN

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0740-01-4          JUDGE JAMES W. BENTON, JR.
                                              AUGUST 20, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                    Ann Hunter Simpson, Judge

          Carolyn V. Grady (Carolyn V. Grady, Esq.,
          P.C., on brief), for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     The issue presented by this appeal is whether the trial judge

erred in permitting the Commonwealth to introduce in its

case-in-chief evidence of the defendant's prior "bad acts."[1]  We

uphold the trial judge's ruling and, therefore, affirm the

judgment.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] In his petition for appeal, appellant also challenged the
sufficiency of the evidence to support his convictions.
Although we granted his petition on both issues, appellant's
brief raised only this one issue for review.  Pursuant to Rule
5A:20, we decide only the issue briefed.  See Morris v.
Commonwealth, 33 Va. App. 664, 666 n.1, 536 S.E.2d 458, 459 n.1
(2000).

The indictments alleged that on May 13, 1999 Calvin Drew Swanigan abducted his wife and committed spousal rape and that on June 4, 1999 he abducted his wife, committed spousal rape, and used a firearm while committing abduction or spousal rape. During the Commonwealth's case-in-chief, Swanigan's wife testified that she and Swanigan married on July 8, 1995 and separated on March 24, 1999. She recalled the precise date they separated because she appeared in court to testify against Swanigan concerning a January 1999 incident in which Swanigan drove his truck into the back of her vehicle while she was driving. Later that day, she moved to her sister's home.

When the prosecutor began to question Swanigan's wife about the details of her relationship with Swanigan, Swanigan's attorney objected. Over objection, Swanigan's wife testified that Swanigan contacted her at her sister's house, said he loved her, and asked her to return home. She testified she did not return home because Swanigan had physically assaulted her five or six times prior to their separation. She obtained criminal warrants for some of those incidents. In particular, she testified Swanigan had been convicted of assault and battery against her in 1996, and she identified photographs taken at that time depicting her "with a black eye." During her testimony, the Commonwealth introduced in evidence the conviction order. Swanigan's wife also testified

-

that Swanigan had injured her on other occasions, which she had not reported.

Concerning the specific events alleged in the indictments, Swanigan's wife testified that on May 13, 1999 she noticed Swanigan following her car and told him she would contact the police. After waiting to file a complaint at the police department, she returned to work and intended to return after completing her shift. As she was driving from work that afternoon, she heard a noise and then saw Swanigan crawling through the fold-down back seat from the trunk. As she screamed, Swanigan grabbed the steering wheel. When she drove to a gas station, Swanigan locked the doors, rolled up the windows, and directed her to drive. She testified that Swanigan cursed her during the drive and that she became nervous and afraid. After a few minutes, Swanigan told her to stop so that he could purchase cigarettes. When she did so, Swanigan briefly exited the car and took the keys. She testified that although other people were around, she did not seek assistance because Swanigan had "abused [her] in front of other people before" and she "figured nobody could help."

When they arrived at the home they previously had shared, he directed her inside and locked the door. He began to kiss her and unbutton her blouse. She testified that she "didn't really want him to touch [her]" but she "knew that there would be nothing that [she] could do." She was "afraid of him" and

-

believed that if she did not comply, "he would beat [her]." She testified that, without her consent, he had sexual intercourse with her. After these events, she drove Swanigan to his vehicle and then went to the police department to file a complaint. Although she obtained a protective order against Swanigan, he later came near her again.

On June 4, 1999, when she opened the trunk of her vehicle, she discovered Swanigan hiding there. He climbed out, pulled her around the car, and shoved her inside. After accusing her of having an affair, he made threats and then drove her to the home they once shared. Inside the house, Swanigan retrieved a gun and told her that "you're going to sit here and watch me blow my head off." When he placed his thumb on the trigger, she pushed the gun away. She testified that after she told Swanigan she would drop the charges, he "seemed to have a little smirk on his face as if he knew he had [her] scared." Swanigan then directed her into the bedroom, told her to put on her wedding gown, and began to touch her breast. Believing "he was going to kill [her]," she unbuttoned her blouse. Swanigan had sexual intercourse with her. She testified that she did not resist because she "was afraid of him" and because "[h]e had the gun in the room."

Later, Swanigan took her into the dining room, propped the shotgun against the table, and wrote a "suicide note" to his mother. When Swanigan received a call that the police were

looking for him, she told him she would not tell anyone where she had been. She testified that he then made her wash, and he put her clothes in the washing machine. Shortly after they left the residence, the police stopped them at a roadblock, searched Swanigan incident to the arrest, and found a shotgun shell in his pocket.

At the conclusion of the evidence, the jury convicted Swanigan of each of the five offenses. This appeal followed.

### III.

Swanigan contends the trial judge erred in allowing the prosecutor to prove his prior conviction for assault and battery and allowing into evidence photographs of his wife taken after the assault. The Commonwealth argues that the evidence comes within an exception to the general rule barring evidence of other crimes.

Addressing the use of other crimes evidence, the Supreme Court has held as follows:

> It is . . . well established that evidence of other offenses should be excluded if offered merely for the purpose of showing that the accused was likely to commit the crime charged in the indictment. However, the exceptions to the general rule are equally as well established. Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged.

-

Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  Moreover, "[t]he decision to admit such evidence involves a balancing of probative value against incidental prejudice that is committed to the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion."  Lafon v. Commonwealth, 17 Va. App. 411, 418, 438 S.E.2d 279, 283 (1993).

Swanigan was charged with spousal rape in violation of Code § 18.2-61(B), which provides that, "[i]f any person has sexual intercourse with his or her spouse and such act is accomplished against the spouse's will by force, threat or intimidation of or against the spouse or another, he or she shall be guilty of rape."  As used in Code § 18.2-61, "[i]ntimidation . . . means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will."  Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985).  In seeking to prove Swanigan had sexual intercourse with his wife through intimidation, the prosecutor was entitled to establish that the act was accomplished "by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure."  Id.

The evidence of Swanigan's prior conviction and assaults upon his wife was relevant to prove the nature of their relationship.  It tended to prove Swanigan's knowledge that his

-

actions were intimidating and his awareness that his wife was submitting to his actions out of fear rather than consenting. Indeed, "[s]ubmission through fear to sexual intercourse is not consent." Id. The photographs depicting the extent of her injuries from the prior assault also tended to explain why she did not physically resist Swanigan and her lack of consent. Where the relationship between parties is an issue, it is permissible to prove "there were turbulent episodes in which the conduct of the defendant toward the [other party] was aggressive and threatening." Compton v. Commonwealth, 219 Va. 716, 729, 250 S.E.2d 749, 757 (1979). The evidence was therefore relevant to a specific element charged in the offense and tended to prove Swanigan used intimidation to obtain his wife's submission to his commands.

Moreover, the judge did not abuse her discretion in determining the probative value of the evidence was not outweighed by the prejudicial effect. Although the evidence had a tendency to prove Swanigan's general disposition to be violent, that facet of the evidence was greatly outweighed by its tendency to prove Swanigan intended to have intercourse with his wife without her consent, that he knew his wife had reason to fear him, and that at the time of these events he used to his advantage his prior physical abuse to intimidate his wife into sexual intercourse.

-

For these reasons, we hold the evidence of Swanigan's prior conviction for assault and battery against his wife and of photographs depicting his wife after the assault was not improperly admitted.  Accordingly, we affirm the judgment.

<u>Affirmed.</u>