COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Overton
Argued at Richmond, Virginia


HALLIE JUNIUS BULLOCK
                                              OPINION BY
v.       Record No. 1325-97-2   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                             APRIL 28, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      James B. Wilkinson, Judge

            Brian J. Grossman (Eck, Collins & Marstiller,
            on briefs), for appellant.

            Marla Graff Decker, Assistant Attorney
            General (Richard Cullen, Attorney General, on
            brief), for appellee.


     Hallie Junius Bullock (appellant) was convicted in a jury

trial of malicious wounding, robbery, and two counts of use of a

firearm during the commission of the felony offenses.  On appeal,

he contends the trial court erred in admitting evidence of his

subsequent "bad acts."

                                I.

     On November 21, 1996, at approximately 5:00 p.m., Dr.

Alexander Yuzefovsky (the victim) was returning to his apartment

in the St. John's Woods apartment complex in Richmond.  It was

daylight and a "little bit rainy."  Shortly after Yuzefovsky got

out of his car, he heard what he believed to be a "jogger"

running up behind him.  As he began to turn to the right to let

the person pass, he "heard a shot" and "felt [a sharp] pain in

[his] right shoulder."  As he fell to the ground, Yuzefovsky saw

the attacker pick up his car keys and run back to his car, where another man was standing. Both men drove away in Yuzefovsky's vehicle.

Yuzefovsky was taken to the Medical College of Virginia, where he had a total of nine surgeries. As a result of the attack, Yuzefovsky suffered severe and permanent injury to his right shoulder.

No shell casings or ballistic evidence was recovered at the crime scene. The police concluded that Yuzefovsky was shot in the shoulder with a weapon that was not a handgun.

Yuzefovsky saw his assailant's face when the man picked up the keys and again at the time he opened the car door. The victim made a conscious effort to "try to remember the face." Neither the assailant nor his accomplice was wearing a mask. Yuzefovsky described the man who shot him as an African-American, seventeen to nineteen years old, 5'8"-5'9" tall and weighing 160-165 pounds. Appellant is a nineteen-year-old African-American male. He is 5'9" and weighs 160 pounds.

On December 17, 1996, the police visited Yuzefovsky in the hospital and showed him six photographs.[1] He told police that his assailant was not in any of the photos. On December 23, the police returned to the hospital and created a computer composite drawing based on the victim's description of his assailant. On January 23, 1997, Yuzefovsky reviewed a second photo spread at

---

[1]Appellant's photograph was not among the six.

2

the police station.  He picked appellant's photograph from the group of eight and identified him as his attacker.  Yuzefovsky also identified appellant in court as the man who shot him.

At trial, the Commonwealth introduced evidence from two witnesses over appellant's objection.  Stanley Hawkins identified a sawed-off shotgun as the gun he borrowed from appellant and used in a robbery in Richmond on December 31, 1996, one month after the Yuzefovsky shooting.[2]  Hawkins recognized the gun by its "taped" stock and its "pull bolt" and cartridge.  Hawkins added that on January 6, 1997, he purchased the shotgun from appellant for $25.  Hawkins further testified that on the evening of January 6, 1997, he and appellant were riding in a vehicle "being pursued by the police."  During the pursuit, Hawkins kicked the car door open and threw the shotgun out of the car.

Richmond Police Detective Michael Mabry testified that after an undercover surveillance operation which resulted in the January 6 chase, the police recovered the shotgun that was thrown from the car.  He further testified that appellant was one of the occupants of the vehicle apprehended after the chase.

When counsel showed Yuzefovsky the shotgun recovered on January 6, he testified that "[t]his thing looks . . . identical [to what] that man had in his hands."  The shotgun was introduced into evidence as the weapon used to shoot Yuzefovsky.

---

[2]At the time of his testimony, Hawkins had been charged with the robbery.

Appellant's defense included four alibi witnesses who testified that appellant was at his apartment in Stratford Hills[3] throughout the afternoon of November 21, 1996. Elanda Wilson, appellant's roommate, testified that appellant was home when she awoke around noon and she remained with him all afternoon, except for a half-hour around 2:00 p.m. Kenya Moore, appellant's friend, testified that he was with appellant at the apartment from 1:30 or 2:00 p.m. until after 7:00 p.m. Jaroon Woodson, another friend, testified that appellant was there when he arrived at around 7:00 p.m. Additionally, appellant's girlfriend, Tracie Walker, testified that she spoke to appellant on the telephone at his home, sometime between noon and 4:00 p.m.

## II.

Appellant challenges the admission of Hawkins' and Mabry's testimony regarding appellant's role in the events of December 31, 1996 and January 6, 1997. He contends the trial court erred in finding the probative value of the evidence outweighed the prejudicial effect on appellant.

"Evidence of other crimes or bad acts is inadmissible if it is offered merely to show that the defendant is likely to have committed the crime charged." Goins v. Commonwealth, 251 Va. 442, 462, 470 S.E.2d 114, 127, cert. denied, 117 S. Ct. 222 (1996). However,

there are important exceptions to that rule.

---

[3]Stratford Hills apartments are approximately one mile from St. John's Woods apartments, the site of the shooting.

Evidence of other crimes is admissible if it tends to prove any fact in issue, even though it also tends to show the defendant guilty of another crime.

Hewston v. Commonwealth, 18 Va. App. 409, 412, 444 S.E.2d 267, 268 (1994) (citing Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616, cert. denied, 498 U.S. 908 (1990)).

"'[O]ne of the issues upon which "other crimes" evidence may be admitted is that of the perpetrator's identity, or criminal agency, where that has been disputed.'" Id. Moreover, "[e]vidence of 'other crimes' is relevant and admissible if it tends to prove any element of the offense charged," Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998), "or if 'the evidence is connected with . . . the offense for which the accused is on trial.'" Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988), cert. denied, 490 U.S. 1009 (1989) (citation omitted).

"Admission of evidence under [the] exceptions . . . is subject to the further requirement that the legitimate probative value of the evidence must exceed the incidental prejudice caused the defendant." Guill, 255 Va. at 139, 495 S.E.2d at 491–92. "'The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse.'" Hewston, 18 Va. App. at 414, 444 S.E.2d at 269 (citation omitted). See Battle v. Commonwealth, 24 Va. App. 440, 482 S.E.2d 873 (1997).

5

"[T]he test for admission of evidence of other crimes is met when there is 'a causal relation or logical and natural connection between the two acts, or they . . . form parts of one transaction.'"[4] Guill, 255 Va. at 140, 495 S.E.2d at 492 (quoting Barber v. Commonwealth, 182 Va. 858, 868, 30 S.E.2d 565, 569 (1944)). This test does not distinguish between subsequent or prior bad acts. See also United States v. Whaley, 786 F.2d 1229, 1232 (4th Cir. 1986) ("The mere fact that the 'other acts' at issue occurred after the events charged in the indictment does not render them irrelevant.").

In the instant case, Hawkins and Mabry provided testimony that linked appellant to the shotgun introduced as the weapon used in the charged offenses. This evidence tended to prove the identity of appellant as the criminal agent in the robbery and malicious wounding counts. In addition, appellant's possession of the shotgun was an element of the two counts of use of a firearm in the commission of a felony. Consequently, the disputed evidence was sufficiently related to the crimes charged

---

[4]In Guill, the Commonwealth introduced evidence of a 1985 burglary and attempted rape which it argued was sufficiently similar to the charged burglary to show the defendant's intent was to rape. The trial court found the circumstances of the prior crime sufficiently similar to the charged offense and admitted the evidence. The Supreme Court reversed, noting several factual differences and holding that "evidence of the 1985 crime was inadmissible . . . because that offense was not idiosyncratic in relation to the facts of the present offense. As such, the evidence lacked a logical relationship to the offense charged and, thus, was irrelevant and showed only the defendant's propensity to commit the crime charged." Guill, 255 Va. at 141, 495 S.E.2d at 493.

and satisfied this threshold requirement.

Appellant presented an alibi defense, disputing his identity as the criminal agent. The Commonwealth bore the burden of proving beyond a reasonable doubt that appellant was the man who attacked Yuzefovsky and that he used a weapon, the shotgun later found and identified by the victim, when he did so. Evidence tending to establish appellant's ownership of the weapon used in the shooting was critical to link appellant to the crimes and to corroborate the victim's identification.

Detective Mabry testified that the police recovered the shotgun following pursuit and apprehension of a vehicle in which appellant was a passenger. This testimony linked the passengers of the car, including appellant and Hawkins, to the weapon used in the Yuzefovsky shooting. Hawkins testified that he borrowed the shotgun from appellant on December 31, 1996 and that appellant sold him the weapon on January 6, 1997. Both of these facts tended to establish that appellant was in possession and control of the shotgun one month after the shooting. Mabry's and Hawkins' testimony, taken together, established a connection between appellant and the shotgun and corroborated Yuzefovsky's eyewitness identification of appellant as the shooter. There was a "'logical and natural connection between'" appellant's subsequent possession of the weapon and the crime charged, <u>Guill</u>, 255 Va. at 140, 495 S.E.2d at 492 (citation omitted), and the information was highly probative of appellant's identity as the

7

criminal agent.

Appellant next argues that the probative value of the disputed testimony was outweighed by its highly prejudicial nature, because it connected him to an admitted robber, a police chase, providing a gun used in the commission of another felony, and the sale of a gun. We disagree. Although the evidence reflected that appellant was involved with questionable associates in questionable circumstances, which might have had an adverse effect on him, the trial court did not abuse its discretion in finding that the substantial probative value of the evidence outweighed this incidental prejudicial effect.

Appellant also contends that even if the evidence was admissible in some form, the Commonwealth failed to limit the scope of the prejudicial testimony to information necessary to link him with the weapon several weeks after the shooting. Appellant claims the evidence that he had been under surveillance, that Hawkins had used the weapon to rob a drug store, and that Hawkins and appellant had been in a police chase was irrelevant and should have been excluded. Appellant's contention lacks merit.

No witness testified that appellant was the person under surveillance. Mabry testified only that he was conducting surveillance when he became involved in the police chase. Any one of the occupants of the vehicle, or the vehicle itself, could have been the subject of police interest. Hawkins' reasons for

8

borrowing the shotgun were closely connected to the probative information that he borrowed it from appellant. Hawkins' and Mabry's testimony about the police chase explained how the police recovered the shotgun and proved that appellant and the shotgun were both in the vehicle. Appellant "had 'no right to have the evidence sanitized,' and we cannot say that the trial judge abused his discretion in admitting relevant and material evidence." Brown v. Commonwealth, 15 Va. App. 232, 235, 421 S.E.2d 911, 913 (1992) (citation omitted).

Finally, appellant contends the challenged evidence was too remote in time from the crime charged and should not have been admitted. "[T]he trial court may consider remoteness as one of the factors in determining evidentiary relevance of prior bad acts evidence, but it should not withhold such evidence solely on the basis of remoteness unless the expanse of time has truly obliterated all probative value." Lafon v. Commonwealth, 17 Va. App. 411, 419, 438 S.E.2d 279, 284 (1993). We hold that this principle applies equally in cases of subsequent bad acts. See, e.g., Whaley, 786 F.2d 1229. Therefore, any remoteness in time of the contested evidence relates only to the weight it should be given. The disputed testimony concerned events occurring approximately six weeks after the shooting. Under these facts, the evidence was not so remote that its admission was error.

For the foregoing reasons, the decision of the trial court is affirmed.

9

<u>Affirmed.</u>