COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Millette
Argued at Alexandria, Virginia


MICHAEL SMALLWOOD, S/K/A
  MICHAEL T. SMALLWOOD

                                                MEMORANDUM OPINION[*] BY
v.       Record No. 0592-07-4                   JUDGE LeROY F. MILLETTE, JR.
                                                       APRIL 29, 2008

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                         M. Langhorne Keith, Judge

          Teresa E. McGarrity, Senior Assistant Public Defender (Whitney E.
          Minter, Senior Assistant Public Defender, on briefs), for appellant.

          Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
          Attorney General, on brief), for appellee.


       Michael T. Smallwood (Smallwood) was convicted in a jury trial of one count of

carjacking, in violation of Code § 18.2-58.1.  On appeal, Smallwood contends the trial court

erred (1) by admitting evidence of a prior domestic dispute between Smallwood and the victim,

and (2) by excluding evidence that a prosecution witness was awaiting trial on a felony charge.

For the reasons stated, we affirm the trial court on both issues.

                                   I.  BACKGROUND

       Smallwood and Melissa L. Patterson (Patterson) dated for approximately eight years and

are the natural parents of two minor children.  Smallwood and Patterson shared an apartment in

Washington, D.C. until mid-December 2005.  On December 18, 2005, Smallwood and Patterson

had a domestic dispute, which led Patterson to file a police report.  At trial, Patterson testified

that "[she and Smallwood] got into an argument . . . and ended up fighting and [she] passed out."

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After the dispute, Patterson left the apartment she shared with Smallwood and took their children to a friend's home. Patterson then went to the police department "[s]o they could take pictures of [her] face. [She] had a bruise on [her] face."

Shortly thereafter, Smallwood removed the children from school. Although Smallwood called Patterson repeatedly on her cell phone to speak with her, she refused to meet with him. Smallwood kept the children out of school for two days before Patterson could convince him to take them back to school. When Smallwood returned the children to school, Patterson picked them up and took them to her mother's home in South Carolina. On December 27, 2005, Patterson and the children returned to Virginia.

On December 28, 2005, Patterson arrived at her workplace, MITRE Corporation (MITRE) in McLean, Virginia, at approximately 7:30 a.m. She parked and exited her sports utility vehicle. Before Patterson reached the entrance to MITRE, Smallwood jumped out of the back seat of a vehicle and approached Patterson, who took a deep breath because she was in shock. Smallwood grabbed Patterson's arm and said if she hollered he would blow her f***ing brains out. Smallwood pulled Patterson back to her vehicle. Smallwood placed Patterson in the passenger side front seat of her vehicle and began to walk around to the driver's side. Patterson testified that when Smallwood was walking around the vehicle she reached over and honked the horn to get a passerby's attention. Smallwood returned to the passenger side of the vehicle and pushed Patterson into the back seat through the space between the two front seats. Smallwood returned to the driver's seat, started the vehicle, and drove from the MITRE parking lot.

After leaving the MITRE parking lot, Smallwood drove first to an acquaintance's home and then to Patterson's apartment in Washington, D.C., which Smallwood previously shared with her. A policeman in an unmarked police car began following Smallwood and Patterson, and the pursuit quickly evolved into a high-speed chase through Washington, D.C. Smallwood eluded

the policeman and drove to an apartment in Bladensburg, Maryland, where they remained for several hours before police apprehended Smallwood.

Smallwood was indicted on one count of abduction in violation of Code § 18.2-47 and one count of carjacking in violation of Code § 18.2-58.1.[1]  Trial by jury was held on October 23-26, 2006.

On the first day of trial, the court heard argument on Smallwood's motion *in limine*, which sought to exclude, in pertinent part, evidence of Smallwood's alleged assault of Patterson on December 18, 2005 and evidence that Smallwood had allegedly assaulted Patterson on prior occasions.[2]  The parties' arguments focused on Smallwood's alleged assault of Patterson on December 18, 2005.  The prosecution argued that

> [w]hat the Commonwealth intends to do in this case is not to show the propensity to commit a crime, but rather that the assaults that occurred . . . relate to the end result of why [the defendant] abducted [the victim] on the 28th of December.  They have a relationship that goes back, to the Commonwealth's understanding, about nine years, about to 1997. . . .  What the Commonwealth's intention is, is to refer to December 18th of 2005, 10 days prior to this incident, where he assaulted her.  That assault led to a cascading effect . . . .  The Commonwealth's position is that 10-day period is what built up this rage, or this anger, within this

---

[1] Pursuant to Code § 18.2-58.1(B),

> [a]s used in this section, *"carjacking"* means the intentional seizure or seizure of control of a motor vehicle of another with intent to permanently or temporarily deprive another in possession or control of the vehicle of that possession or control by means of partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault *or otherwise putting a person in fear of serious bodily harm*, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever.

(Emphasis added).

[2] The prosecution had knowledge of Smallwood's 1998 conviction for assaulting Patterson and a 2002 conviction involving Patterson, but sought only to introduce evidence of Smallwood's alleged assault of Patterson on December 18, 2005.

particular Defendant, and what led him to do the acts that he did. So it is not to show propensity, but it is to show motive, it is to show his intent, it is to show his feelings, and the prior relationship towards each other, in particular those 10 days before the 28th of December.

The court denied Smallwood's motion *in limine* as to the December 18, 2005 incident, holding the Commonwealth could use the incident to "show [Patterson was] afraid . . . the probative value outweighs the prejudice." Thereafter, Patterson testified about the December 18, 2005 domestic dispute.

The prosecution also called Frank Cope, Jr. (Cope) as a witness to corroborate Patterson's account of what took place leading up to and on December 28, 2005.[3] Cope was incarcerated, awaiting trial on a felony charge, and had befriended Smallwood while they were both in the Fairfax County jail. During the course of Smallwood's conversations with Cope, Smallwood revealed the details surrounding his case, which Cope recounted to the jury. Before Cope took the stand, defense counsel asked the court to allow cross-examination about the fact that Cope was charged with a felony and argued that such information went to his motive to fabricate. The court denied the request, holding that to question Cope in this manner would not be proper impeachment: "Well, you can ask [Cope] what hopes and plans he has, but I agree with [the Commonwealth]; you can't ask him what he's charged with because that's not proper impeachment." The court held, however, that defense counsel could ask Cope about the fact that he had a case pending in Fairfax County.

---

[3] The prosecution called another jailhouse informant, Eugene Curry (Curry), to corroborate Patterson's testimony. Curry testified Smallwood told him about the facts surrounding his incarceration. His testimony included,

> [t]hat [Smallwood] had pulled up at [Patterson's] job and was waiting for her to arrive, and once she pulled up, he got out of a car that he was in. She got out of her vehicle, he grabbed her by the arm, told her to get back into the truck, and left from there.

Cope testified he had never met Curry.

The jury found Smallwood guilty of one count of carjacking. The jury was unable to come to a unanimous decision on the abduction charge, and the court granted the Commonwealth's uncontested motion to *nolle prosequi* that charge.

Smallwood timely appealed his conviction of carjacking, arguing the trial court erred by admitting evidence of his prior bad acts, specifically pertaining to his December 18, 2005 domestic dispute with Patterson, and by excluding evidence that Cope was awaiting trial on a felony charge.

## II. ANALYSIS

The two issues on appeal pertain to admissibility of evidence and are therefore governed by the same standard of review. "Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001). "In determining whether relevant evidence should be admitted, the trial court must apply a balancing test to assess the probative value of the evidence and any undue prejudicial effect of that evidence." McCloud v. Commonwealth, 269 Va. 242, 257, 609 S.E.2d 16, 24 (2005). "The determination to admit such relevant evidence rests within the trial court's sound discretion and will be disturbed on appeal only upon a showing of an abuse of that discretion." Juniper v. Commonwealth, 271 Va. 362, 412, 626 S.E.2d 383, 415 (2006).

### 1. Admission of the December 18, 2005 Domestic Dispute

As a general rule, evidence of crimes or other bad acts committed by the accused is incompetent and inadmissible for the purpose of proving the accused committed or likely committed the particular crime charged. Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). This general rule "must sometimes yield to society's interest in the truth-finding process, and numerous exceptions allow evidence of prior misconduct whenever the legitimate probative value outweighs the incidental prejudice to the accused." Dunbar v.

Commonwealth, 29 Va. App. 387, 390, 512 S.E.2d 823, 825 (1999). Evidence of other

independent acts of an accused is admissible when it is "'relevant to an issue or element in the

present case.'" Reynolds v. Commonwealth, 24 Va. App. 220, 224, 481 S.E.2d 479, 481 (1997)

(quoting Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985)). This

Court has consistently recognized the following exceptions, which provide that evidence of prior

bad acts may be properly admitted to:

> (1) prove motive to commit the crime charged; (2) establish guilty
> knowledge or to negate good faith; (3) negate the possibility of
> mistake or accident; (4) *show the conduct and feeling of the*
> *accused toward his victim, or to establish their prior relations*;
> (5) prove opportunity; (6) prove identity of the accused as the one
> who committed the crime where the prior criminal acts are so
> distinctive as to indicate a *modus operandi*; or (7) demonstrate a
> common scheme or plan where the other crime or crimes constitute
> a part of a general scheme of which the crime charged is a part.

Lafon v. Commonwealth, 17 Va. App. 411, 417, 438 S.E.2d 279, 283 (1993) (emphasis added).

In order to deem evidence of prior bad acts admissible, the trial court must find the

evidence (1) falls into one of the above-mentioned exceptions; and (2) the legitimate probative

value of the evidence exceeds the incidental prejudice to the defendant. Bullock v.

Commonwealth, 27 Va. App. 255, 261, 498 S.E.2d 433, 435 (1998). "'The responsibility for

balancing the competing considerations of probative value and prejudice rests in the sound

discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the

absence of a clear abuse.'" Id. at 261, 498 S.E.2d at 435-36 (quoting Hewston v.

Commonwealth, 18 Va. App. 409, 414, 444 S.E.2d 267, 269 (1994)).

We have also recognized the test for admission of evidence of other crimes is met when

there is a causal relation or logical and natural connection between the prior bad act and the

charged offense. Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805 (holding that evidence of other

offenses is permissible in cases "where the evidence is connected with or leads up to the offense for which the accused is on trial").

During the hearing on Smallwood's motion *in limine*, the Commonwealth argued the December 18, 2005 evidence was proffered not to show propensity, but to show Smallwood's motive, intent, feelings, and his prior relationship with Patterson, particularly during the ten days leading up to the carjacking and alleged abduction. This rationale fits one of the well-established exceptions: "to show the conduct and feeling of the accused toward his victim, or to establish their prior relations." Callahan v. Commonwealth, 8 Va. App. 135, 141, 379 S.E.2d 476, 480 (1989) (holding that evidence of the accused's threats and assaults against his victims was properly admitted, as it was probative of the relationship between the accused and his victims and of his motive and intent).

The relationship between Smallwood and Patterson sets the backdrop for what transpired on December 28, 2005. The events of December 18, 2005 and the following ten days have probative value to show Smallwood and Patterson's relationship, Smallwood's motive and intent, and the existence of fear in Patterson when the charged crimes took place. The December 18, 2005 domestic dispute bears a logical and natural connection to the events of December 28, 2005, and the facts that establish their nexus are probative of the existence or non-existence of the elements of carjacking set forth in Code § 18.2-58.1. The trial court properly distinguished the present case, in which the accused and victim had a pre-existing relationship, from one where the accused and victim are strangers:

> As I understand your defense, you're going to say Mr. Smallwood drove up, and [Patterson] hopped in the car willingly, and drove off with him, and so there was . . . no carjacking, and the Commonwealth is going to say that can't be because he was making these phone calls threatening her, and it grew out of this assault, and it seems to me that's -- it may be prejudicial, but it's very probative. . . . [I]f this was a case of mistaken identity, then I would think the Commonwealth's evidence would not be probative

- 7 -

of anything, it would just be prior bad acts, but it seems to me it's part and parcel of why, from the Commonwealth's point of view, the victim couldn't possibly have willingly gotten in the car, given the history of what happened from the 18th on.

The Commonwealth had a high hurdle to overcome to establish Patterson's fear, particularly in light of the defense's argument that what took place on December 28, 2005 was consensual.

In determining the admissibility of appellant's prior bad acts, the trial court took the requisite second step of balancing the probative value and prejudicial effect of the evidence and held "[the Commonwealth] can show [Patterson was] afraid . . . the probative value outweighs the prejudice." The facts adduced at trial support the court's decision that the balance tilted in favor of the probative value of what transpired between Smallwood and Patterson from December 18 to 28, 2005. In the absence of an abuse of discretion, we will not disturb the trial court's determination.

### 2. Denial of Cross-Examination on Cope's Unadjudicated Felony Charge

The Confrontation Clause of the Sixth Amendment grants a criminal defendant the right to cross-examine witnesses called by the prosecution. James v. Commonwealth, 254 Va. 95, 98, 487 S.E.2d 205, 207 (1997). This confrontation right was held applicable to state prosecutions under the Fourteenth Amendment in Pointer v. Texas, 380 U.S. 400, 406 (1965). Dearing v. Commonwealth, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000). The United States Supreme Court has "'recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 316-17 (1974)).

The trial court denied defense counsel's request to cross-examine a prosecution witness, Cope, about the fact he was charged with a felony. The charge had not been adjudicated. The

court determined defense counsel could ask Cope what "hopes and plans he ha[d]" but could not "ask him what [he was] charged with because that's not proper impeachment."

It was error to deny Smallwood the opportunity to question Cope about the fact that Cope was charged with a felony. The jury was entitled to this isolated piece of information for the purpose of weighing Cope's credibility and any motive to fabricate he might have had when he testified against Smallwood.

"When a federal constitutional error is involved, a reversal is required unless the reviewing court determines that the error is harmless beyond a reasonable doubt." Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000).

> "Whether such an error is harmless depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

Dearing, 260 Va. at 673, 536 S.E.2d at 904 (quoting Van Arsdall, 475 U.S. at 684).

We find the trial court's error in denying Smallwood the opportunity to cross-examine Cope about the nature of Cope's pending felony charge was harmless beyond a reasonable doubt. It is clear that such error was harmless when reviewed in light of the testimony defense counsel was able to elicit from Cope for impeachment purposes. During cross-examination, Cope testified that he had been convicted of a felony, was currently incarcerated, had been convicted of a theft charge, currently had charges pending against him in Fairfax County for which he had not yet been sentenced, had contacted his attorney first, not a deputy in his cell block, regarding his knowledge of Smallwood's case, talked to his attorney about testifying in the case and instructed her to contact the Commonwealth, and that his case pending in Fairfax County had

been continued. Thus, the jury had numerous facts serving to impeach Cope's credibility and the omission of the fact that he had a felony charge pending against him did not affect the verdict.

The record contains substantial evidence supporting Smallwood's conviction. Testimony from Cope and Curry, a second jailhouse informant who never met Cope, corroborated the victim's testimony. In addition, a MITRE employee testified she saw a male and female roughhousing, pushing, shoving, and speaking loudly in the MITRE parking lot on the morning of December 28, 2005. The jury also viewed video footage captured by a surveillance camera, which depicted the events Patterson described as having taken place in the MITRE parking lot that morning.

After reviewing the extent of defense counsel's cross-examination of Cope, the testimony corroborating Cope's testimony, and the overall strength of the prosecution's case against Smallwood, we find the erroneous exclusion of the fact that Cope was charged with a felony was harmless beyond a reasonable doubt.

### III. CONCLUSION

For the foregoing reasons, we affirm Smallwood's conviction.

Affirmed.